[Civ. No. 13152.   First Dist., Div. One.   May 1, 1947.]

HORACE GHISELIN, Appellant, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY (a Corporation) et al., Respondents.

William A. White for Appellant.

Keesling & Keesling and Francis Carroll for Respondents.

WARD, J.—This is a complaint for damages in the sum of $4,646.94 based on a claim for commission on the sale of three insurance policies issued to one George H. Atkinson and a policy on the lives of the employees of California Pacific Utilities Company. Lloyd J. Lynch, president of the corporation of the same name, individually; Lloyd J. Lynch, Inc., general agent of John Hancock Mutual Life Insurance Company; and John Hancock Mutual Life Insurance Company were joined as defendants. Fraud, reasonable value of services performed at defendants' request, and unjust enrichment are alleged, respectively, in three counts. During the trial the court permitted an amendment setting forth usage and custom. Judgment was entered for defendants.

The various paragraphs in the first count, many of which are incorporated in the second and third counts by reference, contain evidentiary allegations, conclusions of law, a narrative of local custom and usage, and charges of concealment of facts with intent to defraud.

In particular, paragraphs XIII and XIV, which are denied in the answer to the amended complaint, allege: "XIII That in continued reliance upon all the statements and the conduct of said defendants, and each of them, and in reliance upon the customs of said insurance business, plaintiff induced one George H. Atkinson to purchase a policy of life insurance in the said defendant John Hancock Life Insurance Company; that plaintiff solicited said George H. Atkinson as an officer of the Guy F. Atkinson Company for the purpose of purchasing life insurance in the amount of $100,000.00, and revealed such information and other data regarding the said party to said defendants, and each of them. That thereafter the said George H. Atkinson did purchase a policy of life insurance in the defendant life insurance company in the amount of $25,000.00, and requested that defendants pay to plaintiff the commission on the said policy. That this policy, hereinafter referred to as first policy, was issued by said defendant insurance company on or about the 1st day of June, 1941. XIV That the commission payable to plaintiff for his services in inducing said George H. Atkinson to purchase said first policy was and is in the sum of $336.13 upon the issuance of said policy, and in the sum of $33.61 annually thereafter for a period of nine years." Thereafter, appear similar allegations covering two other Atkinson policies.

The transaction with the California Pacific Utilities Company, with the exception of the amounts involved, is set forth

in paragraph XVII as follows: "That in reliance upon the said statements and conduct of said defendants, and each of them, with respect to the placing of business, and in reliance upon the customs and trade usages heretofore set forth, plaintiff induced a corporation known as California Pacific Utilities Company to purchase a policy on the lives of the employees of said company. That plaintiff is informed and believes, and therefore alleges, that said policies were written by the said defendants on or about July 1, 1941."

In relation to the Atkinson policies and the Retirement Annuity policy covering the employees of the California Pacific Utilities Company, the court found: "That it is true that certain policies of insurance were issued by the defendant John Hancock Mutual Life Insurance Company insuring the life of George H. Atkinson, and that the commissions on said policies amounted to $1,915.86 and that said company issued to the California Pacific Utilities Company, a corporation, a Retirement Annuity Policy covering the employees of said California Pacific Utilities Company and that the commissions on said policy amounted to $1,200.00 and in this connection the court finds *that none of said policies was purchased or issued or written or sold by the plaintiff or as a result of any of his efforts or activities,* and the court further finds in this regard that said policies were written and sold by the defendants Lloyd J. Lynch and Lloyd J. Lynch, Inc., a corporation." (Emphasis added.)

The court found that allegations in the complaint with reference to the defendants' concealment of facts with intent to defraud were not true. It further specifically found that the allegation in the second cause of action as to an amount due plaintiff as the reasonable value of services performed by plaintiff at the special instance and request of defendants, and the allegation in the third cause of action setting forth defendants' unjust enrichment, were untrue.

Plaintiff contends that he pleaded and proved customs of handling life insurance business in San Francisco; that he pleaded and proved the solicitation and obtaining of Atkinson business; that he pleaded and proved fraudulent conduct on the part of defendants after his reliance on custom as to ownership of business and business data; that defendants are estopped to deny plaintiff was their agent; that defendants are estopped to claim plaintiff did not have a license nor an agency contract; that the statute of limitations as pleaded is not a bar to this action; that all the elements of fraud were

proven showing plaintiff was entitled to damages; that plaintiff who procured the business is entitled to the commission thereon.

If the italicized portion of the findings—that none of said policies was purchased through the activity of plaintiff—is correct, all other questions relating to such matters as reasonable value, unjust enrichment, concealment, fraud and statute of limitations, fade into insignificance.

Whether plaintiff pleaded and proved certain customs of handling life insurance business is immaterial in view of the fact that there is evidence that the contract between a broker, such as plaintiff, and a general agent for a life insurance company, such as Lloyd J. Lynch, Inc., is a written contract. A witness for plaintiff testified as to the custom of having some sort of an underlying contract where a broker's business is accepted—a single-case agreement, a full-time agency contract, or a so-called surplus broker's contract—which cover the commissions that are to be paid. In answer to the question, ''When are these contracts obtained . . . ?'' he answered: ''At the time the man makes the original connection, if it is a blanket contract, and if it is an original contract, it would be given at the time he submits the application, or it can be given when the policy is issued. . . .'' There is no evidence that such a contract was entered into by plaintiff and Lloyd J. Lynch, Inc.

Usage and custom may be introduced as an instrument of interpretation, but may not be used to create a contract. (*Hanley* v. *Marsh & McLennan etc., Ltd.*, 46 Cal.App.2d 787 [117 P.2d 69].)

Throughout the transcript appear the words ''broker'' and ''agent.'' The distinction between the two terms as applied to the facts of this case appears in testimony that plaintiff is an independent broker, whereas an agent is one who represents a life insurance company and has a license to do life insurance business. Insurance Code section 1703 requires ''a life agent of any life insurer'' to obtain such a license. The record contains testimony to the effect that a license is generally only procured for a broker upon his bringing an application for a policy of life insurance.

The casual nature of the relationship of the parties is made evident by a review of the evidence. In the latter part of 1940, in a corridor of the building in which the offices of Lloyd J. Lynch, Inc., are located, plaintiff and Kenneth L. Dunbar, brokerage manager with Lloyd J. Lynch, Inc., en-

gaged in a conversation. Dunbar testified that he solicited any business that plaintiff was not placing elsewhere, in the same manner that he solicited business from about two hundred brokers a week; that he gave plaintiff a kit similar to the five hundred which he gave to other brokers to convey information regarding the John Hancock Company, and that he gave plaintiff permission to use, along with other brokers, the telephone and typewriting facilities of the Lynch office.

The evidence relating to the procurement of the Atkinson policies reveals that plaintiff visited the Atkinson company office in 1940 and left his card with J. Robert Harris, an employee of the company. In the latter part of 1940, he again contacted the company, and in April, 1941, he supplied the Atkinson company with financial data on the Hancock insurance corporation. Plaintiff testified that when he was offered Lynch's assistance, he replied: "I needed no assistance of anybody."

Lynch himself heard through a friend that Atkinson wanted insurance. He asked Dunbar to find out if anyone in his office was working on a $50,000 policy for a person of Atkinson's age. When interviewed plaintiff answered in the affirmative, but refused to give the name of the prospect. To the direct question—was it Atkinson?—plaintiff answered "Yes," but stated there was no use proceeding further because Atkinson would not talk to anyone. Thereafter, Lynch contacted Atkinson and obtained from him an application for a $20,000 policy. The home office turned down this application, and a different form of policy for $25,000 was issued. The commission for obtaining this policy was $336.13, whereas the commission for obtaining a $20,000 policy would be $225. Lynch paid plaintiff $268.90 as the commission on a $20,000 policy, explaining that he was keeping the balance of $67.23 on the remaining $5,000 of the policy as reimbursement for expenditures in procuring the $25,000 policy. Lynch testified that plaintiff said to him, "You are more than fair." Evidence of the insured's view as to who would be entitled to the commissions on his insurance is found in Atkinson's testimony that he thought plaintiff merited the commission on the first policy, but not on future business. The evidence indicates that the policies were issued through legitimate efforts of the Lynch company.

In an attempt to effect a sale of a policy to California Pacific Utilities Company, plaintiff interviewed its president, James A. Ward, in January, 1941, and suggested a form of

group life insurance. Ward was gracious, but dismissed the matter by saying he was not ready. Subsequently C. E. Bramble, who became vice-president of the utilities company, suggested a John Hancock Company retirement annuity policy. Ward called Lynch on the telephone, with the result that an application was filed and subsequently the issuance of a retirement annuity policy was effected. The policy plaintiff suggested was not the same kind of a policy Lynch sold to the utilities company.

■ Plaintiff asserts that defendants are estopped to deny that plaintiff was their agent, and to claim that plaintiff did not have a license or an agency contract. The only evidence to support this assertion is that plaintiff was granted the privilege to use the telephone and typewriting facilities of the offices of the Lynch company. Whether an estoppel arose in this case depends upon whether, as a matter of fact, the plaintiff procured the business. The trial court found that he did not, and there is substantial evidence upholding that finding.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1947.