[Civ. No. 24520.   Second Dist., Div. One.   Aug. 8, 1960.]

W. A. MORRIS, Appellant, v. AEROJET-GENERAL CORPORATION (a Corporation), Respondent.

610

Milo V. Olson and Henry K. Kirkpatrick for Appellant.

Hill, Farrer & Burrill, John J. Wilson and William S. Scully for Respondent.

SCOTT (Robert H.), J. pro tem.*—Plaintiff sued defendant, an Ohio corporation, for alleged breach of contract, asserting that the defendant had employed him to sell certain of its stock and had agreed to pay him for doing so; that he had made the sale but the corporation refused to deliver the stock to the purchaser or to pay him his commission.

At the close of plaintiff's case (which was being tried with a jury) defendant moved for a nonsuit. The court made an order dismissing the jury and dismissing the case. From this order plaintiff appeals.

**█▐█** It was the duty of the trial court in passing upon the motion for nonsuit to give plaintiff's evidence all the value to which it was entitled, indulging every legitimate inference reasonably deducible from the proof in favor of plaintiff, ignoring conflicts in the testimony and disregarding evidence for the defense. (*Nash* v. *Wright,* 82 Cal.App.2d 467, 470 [186 P.2d 686].)

**█▐█** Summarizing evidence presented by plaintiff we find that, when plaintiff called the corporation, its president, Kimball, told plaintiff that it was true that the corporation was contemplating an issue of stock of a total value of five million dollars, being 25,000 shares at $200 a share. Plaintiff told him he would like to handle the placement of it with eastern buyers at a cost not to exceed 5 per cent but would need defendant's literature. Kimball stated to plaintiff, "Line up your buyers, I'll send the material." Defendant sent the printed catalogs or brochures and documents to plaintiff. The latter told Kim-

---

*Assigned by Chairman of Judicial Council.

ball he was going to New York and would attempt to close some sales. Kimball said: "Well, Roger Cortezzi of Auchincloss, Parker and Redpath are doing the same thing. Correlate your efforts with him."

Plaintiff sent the printed material to prospective purchasers in New York and when he arrived there he discussed with them the matter of their purchasing defendant's stock. He was asked for additional printed material which was sent by defendant to plaintiff and forwarded by him to the prospective purchasers.

Plaintiff had telephoned Cortezzi and was told to call him when plaintiff arrived in New York. This conversation was reported to Kimball by plaintiff who also told Kimball that plaintiff had learned that Cortezzi's firm was apparently in the deal and asked Kimball what he should do. Kimball responded: "Keep the pipelines open," which plaintiff understood to mean that he was to keep going.

When plaintiff arrived in New York he called Cortezzi but the latter was leaving town and plaintiff was unable to see him. While there plaintiff interviewed various representatives of prospective purchasers.

Upon his return to Los Angeles he telephoned Kimball and at the latter's request went to see him at his office. Kimball told him he had decided to give the deal to the brokerage firms of Auchincloss, Parker and Redpath and to Kidder, Peabody and Company in New York.

Plaintiff testified that he told Kimball: "That it was a disappointment, and that I could see that $5,000,000 wasn't going to be enough finance for a company that is growing that fast. I said I wouldn't make any trouble over that five that they proposed at that time, but I could see that they were going to need more, and could I have whatever excess over if they went that high." When asked, "What did Mr. Kimball say to that?", plaintiff testified: " 'O.K.' We shook hands and Mr. Beehan took me on a tour of the plant and facility." This conversation was about the 12th to 14th, or perhaps as late as the 19th of April, 1957.

A total of 33,500 shares was issued at $225 a share. The resolution of the board of directors of the corporation relating to it was passed June 4, 1957. There is no evidence that after that date plaintiff had any conversation with defendant's officers or there was any writing employing plaintiff to do anything or promising to compensate him in any way for work done prior thereto or thereafter.

In May plaintiff received an order from one of his purchasers for 5,000 shares at the offering price of $225, but a few days later in the same month the order was cancelled. No other offer was received by or through plaintiff.

From plaintiff's testimony it therefore appears that he claimed a contract to act as broker for sale of stock for $5,000,000 at a commission of not over $250,000 and when told that defendant did not intend to let him proceed under that contract plaintiff merely said it was a major disappointment. That seems to have cancelled whatever right, if there was any, that plaintiff might have had up to that time. Plaintiff testified that after that experience he asked: "Could I have whatever excess over [the $5,000,000] if they went that high" and based his final claim of a contract on the alleged response of defendant's president: "O.K."

█ If the evidence is legally insufficient to support a recovery the trial court should order a nonsuit. The court may grant the motion when, upon a consideration of the evidence in its most favorable aspect, it does not establish a prima facie case. The proof must be of a substantial character. It must be such that a reasonably intelligent person can fairly deduce from it that the fact alleged really does exist. (*Meadows* v. *Emett & Chandler,* 86 Cal.App.2d 1, 10 [193 P.2d 785].)

Upon receiving the purchase order above noted, which was received (and also cancelled) before the resolution of June 4th, plaintiff attempted to telephone William O'Neil, chairman of the board in Akron, Ohio, and being unable to reach him talked with his son John O'Neil in Washington, D.C. Conversation and correspondence with the O'Neils was excluded by the trial court on the theory that neither was a director of the corporation. Plaintiff claims error by this exclusion but does not direct our attention to the words—oral or written—which if admitted into evidence would have fortified his case. We note that the one offer was made in response to solicitation by plaintiff which he had conducted before the meeting at which Kimball explicitly informed plaintiff that the stock would not be placed through him, and was not the result of any new activity of plaintiff under the alleged new contract relating to stock in excess of the original $5,000,000 proposed issue.

█ For the convenience of defendant's president Kimball, and pursuant to stipulation, he was called and permitted to testify out of order, without prejudice to defendant's right to make the motion which was made at the close of plaintiff's case. This was legally permissible (*Ely* v. *Beal,* 100 Cal.App.

2d 743 [224 P.2d 479]). Plaintiff construes language of the trial judge in ruling on defendant's motion to mean that testimony of Kimball must have been in the mind of the court and that it somewhat neutralized the evidence of plaintiff.

His misgivings in that respect do not seem to be borne out by the transcript. The inadequacy of plaintiff's evidence results from its own weakness and not from the resistance offered by testimony of defendant's witness.

Plaintiff further complains that he desired to question a witness as to usage and custom in brokerage transactions. He does not suggest that the witness could have testified as to any usage or custom in cases where the evidence, or lack of evidence, of an agreement, is comparable to this case nor does he direct our attention to any authority to the effect that usage and custom is any substitute for a meeting of minds of parties as the basis of a contractual relationship. "Usage and custom may be introduced as an instrument of interpretation, but may not be used to create a contract." (*Ghiselin* v. *John Hancock etc. Ins. Co.*, 79 Cal.App.2d 438, 441 [180 P.2d 50]. See also *Sharpe* v. *Arabian American Oil Co.*, 111 Cal. App.2d 99 [244 P.2d 83].) The refusal of the trial court to permit testimony clearly not applicable to the facts and law in this case was not a denial of any right of plaintiff.

Plaintiff has made no contention that a permit was issued for the sale of stock by defendant under the Corporate Securities Law of the State of California. Such a permit would be required (Corp. Code, § 25500), because the activities of plaintiff would come within the terms of section 25009, subdivision (a) of Corporations Code: " 'Sale' or 'sell' includes every disposition, or attempt to dispose, of a security or interest in a security for value.

" 'Sale' or 'sell' includes all of the following, whether done directly or by an agent, circular letter, advertisement, or otherwise: An offer to sell; an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale; a taking of a subscription; an exchange; any change in the rights, preferences, privileges, or restrictions on outstanding securities." (*B. C. Turf & Country Club, Ltd.* v. *Daugherty*, 94 Cal.App.2d 320, 329 [210 P.2d 760].) It was plaintiff's duty to ascertain whether a permit had been issued. (*People* v. *Mason*, 86 Cal. App.2d 445, 455 [195 P.2d 60].)

From the evidence it appears that defendant was and is an Ohio corporation intending to issue stock outside of the state of California to purchasers outside of the state who were

obtained by brokerage firms in New York. Aside from the attempted voluntary intrusion of plaintiff into the transaction no permit would be required. It seems unlikely that defendant by the expression "O.K." of its president intended to do or to allow plaintiff in its behalf to do that which the law forbade.

The conduct of plaintiff in his telephone calls and mailing of literature was not legally permissible, and even if he had a contract with defendant which in other respects was sufficient he could not recover because of this violation. The one asserted order upon which plaintiff bases his claim was received here in California and his efforts to have the stock delivered were exerted here.

Notwithstanding the caution demanded of a trial court in ruling on a motion for a nonsuit and of an appellate court in reviewing the ruling it is apparent that plaintiff's evidence viewed in the light most favorable to him was insufficient and that the ruling of the trial court was correct.

Order and judgment affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 25, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 5, 1960.