[Civ. No. 25675. Second Dist., Div. One. Feb. 5, 1962.]

HARRY LEE, Plaintiff and Respondent, v. HELMCO, INC., Defendant and Appellant.

822

Lawrence & Moacanin for Defendant and Appellant.

Booth, Mitchel, Strange & Willian for Plaintiff and Respondent.

FOURT, J.—This is an appeal from the judgment entered upon a verdict of the jury in favor of the plaintiff and against defendant Helmco, Inc.[1]

On October 25, 1956, plaintiff filed a complaint for damages for fraud, wherein two causes of action were set forth. The first cause of action alleged that defendant Scanlan was the agent of defendant Helmco, Inc. (hereinafter referred to as "Helmco") and was acting within the purpose and scope of such agency; that Scanlon made certain promises and representations ". . . without any intention of performing them, or any of them, at the time said promises and representations were made and said promises and representations were not, in fact performed . . . ." and that ". . . Helmco knew that

[1]Judgment was also entered against defendant Maurice Scanlan. As set forth in the judgment on verdict in open court, "The default of the defendant, Maurice Scanlan, having been entered, on motion of the plaintiff, the court orders judgment for the plaintiff, Harry Lee, and against the defendant, Maurice Scanlan, in the same amount as returned by the jury against defendant, Helmco, Inc., a corporation,"

Scanlan made promises and representations without any intention of performing said promises and representations, and with such knowledge, Helmco allowed Scanlan to continue to do so." The second cause of action incorporated most of the allegations contained in the first cause of action but charged that certain promises and representations were ". . . made by Scanlan at the time when Scanlan had no knowledge or information sufficient to give Scanlan any grounds for believing said promises and representations would or could be performed, and said promises and representations were not in fact performed . . . ." and ". . . that Helmco knew that Scanlan made promises and representations without any knowledge or information sufficient to give Scanlan any grounds for believing said promises and representations would or could be performed, and with such knowledge, Helmco allowed Scanlan to continue to do so."

On November 9, 1956, the answer of defendant Maurice Scanlan was filed. Therein, among other things, Scanlan ". . . specifically denies that this defendant is now or ever has been the agent of HELMCO, INC.; alleges that at all times herein mentioned, defendant was a manufacturer's representative for HELMCO, INC., and as such, acted in the capacity of an independent contractor." He further denied that he made the promises and representations contained in plaintiff's complaint.

On May 6, 1957, Helmco filed its answer to the complaint. In addition to denying that Scanlan was its agent and denying that promises and representations were made, the answer set forth an affirmative defense. Therein, among other things, the following was alleged in pertinent part:

"III

"On or about October 26, 1955, this answering defendant entered into a written agreement with codefendant, MAURICE SCANLAN, wherein it was agreed by and between these parties that the said MAURICE SCANLAN would act as 'an independent Manufacturers Representative engaged in the sale of Kitchenette units manufactured by HELMCO, INC.'; that he 'will always be an independent contractor and is not an employee in any sense of HELMCO, INC., or any of its Divisions'; and that he 'will not have authority to at any time, to obligate HELMCO, INC., or any of its Divisions or personnel, either financially or in any other way.' Said written agreement continued in

full force and effect during all the times referred to in plaintiff's complaint. A full, true and exact copy of said written agreement is attached hereto marked exhibit 'A' and made a part hereof by reference.[2]

## "IV

"This answering defendant received a 'Purchase Order Agreement,' dated November 28, 1955, naming plaintiff as purchaser, and ordering the Kitchenette units as set forth in plaintiff's complaint. Said Purchase Order Agreement was solicited by codefendant MAURICE SCANLAN in his capacity as an independent contractor and was accepted and filled by this answering defendant in the ordinary course of its business. Said Purchase Order Agreement was signed by the plaintiff HARRY LEE as purchaser and contained the following express disclaimer: 'It is expressly agreed that the purchaser is an independent contractor in all relations with HELMCO, INC. and that HELMCO, INC., assumes no obligations other than as the manufacturer of the equipment ordered above.'

## "V

"At no time was there made or was there any authorization to make by any officer, employee or agent of this answering defendant, any of the alleged misrepresentations set forth in

---

[2]The Manufacturers Representative Agreement incorporated as Exhibit "A" in Helmco's answer provides, in part, as follows:

"This Agreement confirms and stipulates certain conditions under which representation of Helmco products shall be carried out by both parties.

"1. The Representative will always be an independent contractor and is not an employee in any sense of Helmco, Inc., or any of its Divisions.

"2. The Representative will not have authority at any time, to obligate Helmco, Inc., or any of its Divisions of personnel, either financially or in any other way.

"3. The Representative will not use the name Helmco, Inc., or any of its Divisions in any newspaper ads, presentation literature, business cards, imply directly or indirectly that Helmco, Inc., or its Divisions takes any active part in, or assumes any responsibility for your sales promotion activities or programs, other than as the manufacturer of display and food service equipment that we supply and which bears Helmco's name as the manufacturer.

"4. In response to any inquiries from newspapers, Better Business Bureaus, Chamber of Commerce, or trade associations, regarding the relations between Helmco, Inc., or its Divisions and the Representative whose signature appears below, we, (Helmco) will indicate that the representative referred to is an independent Manufacturers Representative engaged in the sale of Kitchenette units manufactured by Helmco, Inc."

paragraph III of the first cause of action of plaintiff's complaint, nor were any of the representations alleged in plaintiff's complaint to have been made by codefendant MAURICE SCANLAN ever ratified or adopted by act, word or conduct by this answering defendant.''

The pretrial conference order was filed August 31, 1960. A joint pretrial statement was therein incorporated by reference and provides in pertinent part as follows:

"I *Nature of the Case*

"This is an action for damages for fraud in connection with the sale of certain vending machines which plaintiff purchased from Helmco., [*sic*] Inc. in reliance on the false representations of its agent Maurice Scanlan. Plaintiff seeks general damages in the sum of $3,027.39 and punitive damages of $10,000.00 against defendants.

" . . . . . . . . . . . . .

"IV *Contentions of the Parties*

"1. Plaintiff contends:

"(1) That in November of 1955 defendant Scanlan was the agent of defendant Helmco, Inc., and at all times herein mentioned was acting within the actual control or ostensible authority of either of said defendants.

"(2) On or about November 15, 1955 Scanlan orally represented to plaintiff in connection with the sale of certain vending machines that (a) said machines would be delivered and installed in Beverly Hills and Hollywood, California by December, 1955, (b) that Scanlan would furnish plaintiff with locations for said vending machines which were similar to certain designated restaurants in Los Angeles, and (c) that after installation of said vending machines in said locations would produce from $200.00 to $300.00 a month revenue and require only one day's time for service.

"(3) In reliance upon said representations plaintiff purchased 10 vending machines from defendant and paid the sum of $2,990.00 therefor.

"(4) Plaintiff relied upon said representations and the representations were material to that transaction.

"(5) Each of said representations was false and was made by defendant Scanlan without any intention of performing said representations and further that said representations were made by Scanlan without any knowledge or information

sufficient to give Scanlan grounds for believing the representations would or could be performed.

"(6) Said vending machines were without value and are worthless to plaintiff and plaintiff has suffered actual damage in the sum of $3,027.39.

"2. Defendant Scanlan contends:

"(1) Defendant Scanlan disputes and denies each of the contentions hereinabove set forth.

"(2) Scanlan contends that at all times he was acting as an independent contractor and not an agent of defendant Helmco, Inc.

"(3) Defendant contends that on or about November 28, 1955 plaintiff and defendant executed a purchase order agreement marked Exhibit 'A' and attached to said defendant's answer.

"3. Defendant Helmco, Inc., contends:

"(1) Defendant Helmco disputes and denies each of the contentions of plaintiff set out above.

"(2) Defendant Helmco contends that at all times herein mentioned defendant Maurice Scanlan was acting as an independent manufacturer's representative and not as an agent or employee of Helmco., [sic] Inc.

"(3) Defendant Helmco, Inc., contends that defendant Scanlan was not authorized to make the representations alleged in plaintiff's complaint.

"(4) Defendant Helmco contends that the relationship between Scanlan and Helmco, Inc., is set forth in that certain agreement entitled Manufacturer's Representative Agreement dated October 26, 1955 and attached as Exhibit 'A' to defendant Helmco, Inc. for answer to complaint [i.e., see footnote 2].

"V *Facts Agreed Upon*

"1. Defendant Helmco, Inc., is an Illinois corporation.

"2. . . . . . . . . . . . .

"3. That on or about said date [i.e., November 28, 1955] plaintiff paid to defendant Helmco, Inc,, [sic] the sum of $2,990.00.

"4. Said vending machines were delivered to plaintiff in Los Angeles, California on or about March 1, 1956.

"VI *Issues to be Decided.*

"1. Whether or not defendant Scanlan was the agent of defendant Helmco, Inc., or whether or not he was acting within the course and scope of said agency.

"2. Whether or not defendant Scanlan made the representations alleged.

"3. Whether or not plaintiff purchased said vending machines in reliance upon said representations and whether or not said representations were material.

"4. Whether or not said representations were false and untrue.

"5. Whether or not said representations were made by defendant Scanlan without any intention of performing them or whether or not said representations were made without any knowledge or information sufficient to give Scanlan grounds for believing said representations would or could be performed.

"6. Whether or not defendant Helmo [*sic*], Inc., knew that Scanlan made such promises and representations and with such knowledge permitted said defendant to continue said conduct.

"7. The amount of damages, if any, suffered by plaintiff in reliance of said representations and lastly, whether or not plaintiff is entitled to punitive damages against defendants or either of them."

When the case was called for trial defendant Scanlan was not present, nor was any appearance made on his behalf. The jury was selected and opening statements were made on behalf of plaintiff and defendant Helmco. Prior to the reception of any evidence plaintiff moved, in the presence of the jury, that the default of defendant Scanlan be entered. The motion was granted and the trial proceeded. After plaintiff rested his case defendant Helmco moved for a nonsuit. This motion was denied.

At the close of the evidence and the following final arguments on behalf of plaintiff and Helmco, the trial court, prior to any determination being made in the case against defendant Scanlan, submitted to the jury for their determination the question of whether or not defendant Helmco was liable to the plaintiff for fraud committed on the plaintiff and, if so, what the plaintiff's damages were. The jury returned a verdict for plaintiff, against defendant Helmco, and awarded

plaintiff $2,990 as compensatory damages, and $1,500 as punitive damages.

It was after the verdict was rendered and the jury dismissed that plaintiff made a motion that ". . . the Court enter judgment against defendant Scanlan on the basis of the evidence already adduced in connection with the other case." The court then ordered a default judgment against defendant Scanlan. (See footnote 1.)

Viewing the evidence in the light most favorable to the prevailing party, a résumé of the facts is as follows:

In October 1955 plaintiff became acquainted with defendant Scanlan. Scanlan represented to plaintiff that he could arrange a very advantageous business venture for plaintiff, and invited plaintiff to come to his office to discuss the details.

In November 1955 plaintiff went to Scanlan's office. The door leading into the office bore defendant Scanlan's name and the statement that he represented Helmco. Scanlan told plaintiff that he was connected with Helmco. At this meeting in Scanlan's office plaintiff was told that he could purchase certain food dispensing machines manufactured by Helmco; that they would be placed in business locations and that plaintiff could, by serving them several times a month, realize a profit of $250 to $300 a month. Scanlan showed plaintiff stationery and letterheads bearing the name of Helmco. Scanlan accompanied plaintiff to two nearby eating establishments that were clean, well maintained and popular, and represented to plaintiff that these were the types of establishments which would be secured as locations for the food machines.

Subsequently there were several meetings between plaintiff and Scanlan and on each occasion Scanlan urged plaintiff to accept the proposition quickly, reiterated the profits that plaintiff could make, and repeated his promise to secure advantageous business locations.

Shortly after Thanksgiving 1955 plaintiff and Scanlan met at the latter's office, and then proceeded together to a bank where plaintiff borrowed money and obtained a cashier's check in the sum of $2,990, payable to Helmco, Inc. Upon returning to Scanlan's office a purchase order agreement dated November 28, 1955, was authorized by plaintiff as purchaser and accepted by Scanlan. Plaintiff gave Scanlan the cashier's check and Scanlan marked the agreement "Pd in full by Cashier Check." This purchase order agreement was

prepared by Helmco, bore its letterhead, and was used by Scanlan at Helmco's insistence.[3]

Several days thereafter plaintiff received a letter from Helmco acknowledging receipt of plaintiff's order. Subsequently plaintiff received another letter from Helmco dated January 27, 1956, which indicated that the machines would be shipped within two weeks. This correspondence bears on its

---

[3]The Purchase Order Agreement is substantially as follows:

Phone: UNderhill 7-7600

| HELMCO Since 1925 | 7400 W. Lawrence Avenue Chicago 31, Illinois | No. A 1225 |

PURCHASE ORDER AGREEMENT

Date Nov. 28-55

Sold to Harry Lee

Address 8462 - Sunset Blvd. Apt. 224

City Hollywood State Calif.

Phone HO 48051

Ship to

Address SAME

City State

Gentlemen: The undersigned hereby purchase the following HELMCO Equipment:

| Quantity | Model | Type | Item Ordered | Price Each | Total |
|---|---|---|---|---|---|
| | MSK-2 | Single Unit | Serve-All Kitchenette | | |
| 10 | MSK-4 | Double Unit | Serve-All Kitchenette | 299.00 | 2,990.00 |
| | | Pd in full by | Cashier Check No. 171423. | —MS | |

Important: Make all certified or bank draft checks for equipment payable to HELMCO, INC.

Shipping Instructions: As soon as possible

All orders, F. O. B., Factory, not subject to countermand. Orders must be paid in full before shipment will be made. (Cont. next page.)

letterhead the words "Lacy Products Division" and "Minut-Bun Division." In the lower left-hand corner of the letter there is typewritten the words "cc: Mr. Maurice Scanlan, Supervisor Serve All Division."

Plaintiff had told Scanlan that he would have to leave Los Angeles by January 1, 1956, and Scanlan had promised that the machines would be received and set up by December 15, 1955. On two occasions, the latter sometime close to Christmas 1955, Scanlan told plaintiff that the machines were on their way. The January 27, 1956, letter from Helmco informed plaintiff that the machines would probably "be shipped within two weeks." It was stipulated by the parties that the machines were not received until March 1, 1956.

Once the purchase order was signed and the certified check delivered to Scanlan, Scanlan attempted to avoid contact with plaintiff. On those occasions when plaintiff was able to see Scanlan, the latter repeated his promises that the machines would be received shortly; that this was a good business venture; and that he, Scanlan, would have the machines set up in desirable places.

When the machines finally arrived and were placed by Scanlan, the locations proved very undesirable. Some of the owners of the establishments refused even to use the machines, and some of the establishments had gone out of business before the machines had ever been delivered to them. Plaintiff never received any income from the machines and was unable to dispose of them for any amount.

A Mr. Milton Duboff testified on behalf of plaintiff over objections made on behalf of Helmco. The substance of this witness's testimony was that an almost identical *modus operandi* had been used by defendant Scanlan to defraud the witness at or near the time of the events which were the subject of

---

GUARANTEE

HELMCO, INC., guarantees all Serve-All Kitchenettes against mechanical or electrical defects, in workmanship or materials for 1 year from date of shipment, subject to inspection by factory.

HELMCO, INC.

---

It is expressly agreed that the purchaser is an independent contractor in all relations with HELMCO, INC., and that HELMCO, INC., assumes no obligations other than as the manufacturer of the equipment ordered above.

By s/s Maurice Scanlan By s/s Harry Lee
 Accepted Authorized

this suit. All of the events testified to by Mr. Duboff occurred prior to the meeting between plaintiff and Scanlan, at a time when Scanlan was employed as a salesman for another organization, and during which no reference was made to defendant Helmco other than the fact that the witness knew the product purchased (i.e., hot cup units) was manufactured by Helmco.

Portions of defendant Scanlan's pretrial deposition were read into the record. The substance of this was that Scanlan had been given permission by Helmco in October 1955 to have his telephone ". . . listed as a division of Helmco, serving all distributors as a division of Helmco with their permission"; that Helmco gave Scanlan permission to use the name Helmco for any purpose that would aid Scanlan in his sales; and that he (Scanlan) had authority to approve and accept the purchase order agreement on behalf of Helmco.

Upon interrogatory an officer of Helmco admitted that Helmco knew at this time that Scanlan would be selling a package deal consisting of Helmco equipment and the acquisition and allocation of locations for that equipment. However, it was denied that Helmco had any connection with the food products or location acquisition phase of the package deal.[4]

There was evidence that prior to the events which are the subject of this suit Scanlan and Helmco entered into a manufacturer's representative agreement (see foot note 2), however this agreement was never shown to plaintiff.

Mr. Frank R. Lacy, Jr., executive vice-president of Helmco,

_____

[4]Mr. Frank R. Lacy, Jr., Executive Vice-president of Helmco, was called by plaintiff under section 2055 of the code of Civil Procedure. The reporter's transcript discloses the following in pertinent part:

"Q. Now then, sometime in 1955 you had a conference in Chicago with Mr. Scanlan, did you not?

"A. Yes, sir.

"Q. And at that time you were advised by Mr. Scanlan, were you not, that he proposed to set up this type of an arrangement where he would sell your products and obtain locations for prospective purchasers?

"A. No, sir. Mr. Scanlan came to us and asked us to design a piece of equipment that he wanted to use in connection with a program that he wanted to set up out here in California.

"Q. And he told you nothing at all about the fact that he was going to establish locations for this equipment?

"A. No, sir. Our business is solely manufacturing equipment, nothing else.

". . . . . . . . . . .

"MR. MITCHEL: Q. And referring to the interrogatories propounded to Mr. Herman E. Lacy which were filed in the case on March 3, 1958, and were taken by Frank Hines . . . I will read ques-

testified on behalf of Helmco. The substance of his testimony was that after receiving the purchase order from plaintiff no questions were asked of him in regard to this transaction; no complaints were made to him or any other officer or employee of Helmco regarding the quality of the merchandise sold to plaintiff; and that plaintiff never requested Helmco to accept the return of the merchandise and refund the purchase price. It was further testified that in April 1955, at the time of the transaction involving witness Duboff and defendant Scanlan, Scanlan was not known to this witness. He testified that during the period when Helmco was doing business with the organization known as Kitchenette Products there was no participation on the part of Helmco in arranging for the location of the food dispensing units or manufactured merchandise in commercial establishments, and during the latter part of 1955 and the year 1956 Helmco did not participate with Scanlan in obtaining commercial locations for the manufactured products, and did not have any employees or offices in the State of California at that time. It was further testified that Helmco did not take part in any of the procedures whereby food products would be purchased and placed in retail locations with the food dispensing units being sold to plaintiff, so that the owner of the units and merchandise could purvey the food product and realize some income thereby.

Appellant's first contention is that "The Liability for Fraud of Defendant Helmco, Inc. Can Only Be Based Upon a Derivative Theory and, as a Matter of Law, There Was Insufficient Evidence to Establish an Agency."

 It is fundamental that when a verdict is attacked as being unsupported by the evidence, the function of the appel-

---

tion 48 of those interrogatories to your brother:

"'Do you know of any further facts that may help to resolve the issue that exists in this lawsuit? If so, state the same fully in your answer hereto as if specially interrogated.'

"Then the answer attached to question 48—I am quoting:

"'Helmco was approached by Scanlan on a package deal under which equipment manufactured by Helmco would be sold together with other merchandise, particularly canned food products, and involving the acquisition and allocation of locations for the use of the Helmco manufactured equipment, and for the purveying of food products produced by others at locations which were to be provided by a location service.

"'Helmco had no connection whatsoever with either the food products or locations acquisition phase of the package deal. The entire arrangement when culminated was upon the basis of the terms and conditions of a certain manufacturer's representative's agreement, copy of which is related to question No. 20.'"

late court is to determine whether there is substantial evidence, contradicted or uncontradicted, which supports the conclusion reached by the trier of fact. ■ When two or more inferences can be reasonably deduced from the facts, this court cannot substitute its deduction for those of the trier of fact. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *New* v. *New*, 148 Cal.App.2d 372 [306 P.2d 987].)
■ In order for evidence to be substantial it must be of ponderable legal significance. It is not "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be substantial proof of the essentials which the law requires in a particular case. (*Dyer* v. *Knue*, 186 Cal. App.2d 348, 351 [8 Cal.Rptr. 753]; *Estate of Teed*, 112 Cal. App.2d 638, 644 [247 P.2d 54].)

It is stated in 2 California Jurisprudence 2d, Agency, section 179, as follows:

"The extrajudicial declarations of an agent are not admissible to prove either the fact of his agency or the extent of his authority. The general ground of exclusion is that such declarations are hearsay. However, they are not objectionable when introduced to show that the agent acted in behalf of his principal and not in his individual capacity; to show that the third person understood that he was dealing with the other as an agent and not as a principal; or to impeach the testimony of the agent. Moreover, where it is once shown that a person has been given an actual or ostensible authority to act for another, any declarations made by such agent at the time of the transaction of the business entrusted or apparently entrusted to him, and relating to such business, are admissible as part of the res gestae. So, also, the agent himself may be estopped by his own declarations to deny that he was acting for his principal.

"On the other hand, the testimony of an agent at the trial is admissible to prove either the fact of agency or the extent of the authority.

"Agency and the extent of the agent's authority are questions of fact, and may be established by parol, except in those cases where a written authorization is expressly required by law."

An agency is either actual or ostensible. (Civ. Code, § 2298.) An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe

another to be his agent who is not really employed by him. (Civ. Code, § 2300.)

 The evidence introduced on the issue of "actual agency" may be summarized as follows:

(a) Scanlan had authority to accept orders on behalf of Helmco. The purchase order agreement (see footnote 2) which Helmco required Scanlan to use and which was provided by Helmco provided for acceptance by Scanlan;

(b) Helmco had given Scanlan permission to use "Helmco" in connection with anything that would assist Scanlan in making sales and also permission to list Scanlan's telephone as a division of Helmco;

(c) Helmco had instructed Scanlan that all checks were to be made out to Helmco and the purchase order agreement form so provided;

(d) Helmco was to pay Scanlan a commission on sales of Helmco products; and

(e) Helmco knew that Scanlan intended to sell a package deal whereby Scanlan would sell Helmco products and also acquire and allocate locations for the use of Helmco's products (see footnote 4).

In juxtaposition to the evidence of "actual agency" is the testimony (i.e., pretrial deposition) of Scanlan that he was a manufacturer's representative and the manufacturer's representative agreement (footnote 2).

An ostensible agency exists when "the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300.) Ostensible agency is predicated upon the theory of estoppel. (See *Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417 [49 P. 559]; *Keppelman* v. *Heikes*, 111 Cal.App.2d 475 [245 P.2d 54]; *House Grain Co.* v. *Finerman & Sons*, 116 Cal.App.2d 485 [253 P.2d 1034].)

 Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the third party to believe that the agency exists. (*Hill* v. *Citizens Nat. Trust & Sav. Bank*, 9 Cal.2d 172 [69 P.2d 853]; *Rivett* v. *Nelson*, 158 Cal.App.2d 268 [322 P.2d 515]; *Traders Credit Corp.* v. *Radin & Kamp, Inc.*, 131 Cal.App. 479 [21 P.2d 461]; *McMurry* v. *Pacific Ready-Cut Homes*, 111 Cal.App. 341 [295 P. 542].)

 The evidence on the issue of "ostensible agency" may be summarized as follows:

(a) The door to Scanlan's office bore the legend that he was representing Helmco;

(b) The purchase order agreement (footnote 3) bore Helmco's name on its letterhead, was prepared by Helmco, and was used by Scanlan at Helmco's instance. It contained a space wherein the order could be "accepted" by Scanlan;

(c) Helmco acknowledged receipt of the purchase order agreement immediately after the order was signed. This letter did not state that Helmco accepted the order, thereby reasonably leading plaintiff to believe that Scanlan had already accepted the order as Helmco's agent;

(d) A letter from Helmco to plaintiff indicated on its letterhead that defendant Helmco had various divisions associated with it, to wit, "Lacy Products Division" and "Minut-Bun Division." The notation at the bottom left of the letter indicated that a copy had been sent to "Mr. Maurice Scanlan, Supervisor Serve All Division";

(e) All checks received by Scanlan were to be made payable to Helmco; and

(f) Scanlan possessed stationery bearing Helmco's name.

Helmco asserts that the purchase order agreement (footnote 3) itself ". . . served to negative any reliance that the plaintiff could place in this writing so as to sustain a showing of ostensible agency." Helmco relies upon the clause contained therein which provides:

"It is expressly agreed that the purchaser [i.e., plaintiff] is an independent contractor in all relations with HELMCO, INC., and that HELMCO, INC., assumes no obligations other than as the manufacturer of the equipment ordered above."

We believe that the meaning of this purported disclaimer clause is simply that Helmco had no principal/agent relationship with the plaintiff. It is the purchaser who is declared to be an independent contractor, not defendant Scanlan. If Helmco had desired to disclaim liability for any representations made to the purchaser, it would have been a simple matter for it to so state.

Scanlan as agent had such authority as Helmco actually or ostensibly conferred upon him. (Civ. Code, § 2315.) Actual authority is defined as that authority which the principal ". . . intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." (Civ. Code, § 2316.) Ostensible authority is that authority which a principal ".... intentionally or by

want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.)

There was sufficient evidence for the trier of fact to hold Helmco liable.

 Helmco's second contention is that "It Was Reversible Error to Allow the Jury to Hear Evidence in the Case Against Both Defendants, Allow Arguments to Be Made Concerning the Liability of Both Defendants, Instruct the Jury as to the Law Concerning Fraud as It Would Apply to Both Defendants, and Then Submit to the Jury Only the Question of Whether or Not Defendant Helmco, Inc., the Purported Principal, Was Liable to the Plaintiff for Fraud."

Appellant states in its opening brief that, "It was an act in excess of the Court's jurisdiction to *arbitrarily withdraw from the consideration of the jury the determination of whether defendant Scanlan was in fact guilty of fraud,* and if so, what damages resulted to the plaintiff." (Emphasis added.)

The above quoted statement is both inaccurate and misleading. The question of whether Scanlan committed fraud was in fact submitted to the jury. The question of Scanlan's *liability* for fraud was not submitted to the jury. The jury was instructed (i.e., "Plaintiff's Requested Instruction No. 1") as follows:

"This action is founded upon a charge of fraud and in order to constitute fraud within the meaning of the law and under the pleadings in this case *the plaintiff must establish each of the following elements:*

"1st: That Mr. Scanlan made the particular representations charged in his complaint;

"2nd: That such representations, if any, were false;

"3rd: That such representations, if any, were material;

"4th: That Mr. Scanlan made said representations without any intention of performing them or that said representations were made without any knowledge or information sufficient to give Mr. Scanlan grounds for believing such representations would or could be performed.

"5th: That in making such representations Mr. Scanlan intended that Mr. Lee alter his position to his injury or risk;

"6th: That Mr. Lee believed and acted in justifiable reliance upon such representations;

"7th: That Mr. Lee was damaged as a result thereof." (Emphasis added.)

In addition to the trial court instructing the jury on the

definition of an agent; actual agency; actual authority; ostensible agency; burden of proof on existence of agency; and independent contractor, the court gave the following two instructions:

"PLAINTIFF'S REQUESTED INSTRUCTION NO. 2

"Ostensible authority is the authority the principal intentionally or by the want of ordinary care, allowed a third person to reasonably believe the agent to possess. *Thus, if you find that Helmco, Inc. intentionally or by want of ordinary care allowed Mr. Lee to reasonably believe that Mr. Scanlon had authority to make such representations, you may find that Helmco, Inc. is responsible for Mr. Scanlan's false representations, if any.*" (Emphasis added.)

"PLAINTIFF'S REQUESTED INSTRUCTION _____

"Since Helmco, Inc. is a corporation, it can only act through employees and agents. Helmco, Inc. is responsible for every act of its employees and agents which is within the scope of the agent's actual or ostensible authority. *Before you may hold Helmco, Inc. responsible for the acts of Mr. Scanlan you must find that Mr. Scanlan had actual or ostensible authority to do the act in question.*" (Emphasis added.)

It is difficult to conceive how Helmco could be held liable for the tortious act of his agent in the absence of proof that the agent committed a tortious act. The perpetration of fraud by Scanlan was denied by Helmco at every stage of the proceedings.

It is apparent from the above instructions that the jury, in imposing liability upon Helmco, of necessity determined that Scanlan committed fraud, was the agent (actual or ostensible) of Helmco and had authority (actual or ostensible) to do the acts.

In so far as defendant Scanlan is concerned, he is not a party to this appeal. By failing to appear at the trial he waived any right to have the issue of his liability for fraud determined by the jury. (Code Civ. Proc., § 631, subd. 1.)

 Appellant's next contention is that it was error for the trial court to deny Helmco's motion for nonsuit.

 The power of the trial court to grant a nonsuit is limited to those situations when disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, there is no substantial evidence to support a verdict in favor of the plaintiff if such a verdict were given. (See *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d

768]; *Morris* v. *Aerojet-General Corp.,* 183 Cal.App.2d 609, 613 [6 Cal.Rptr. 906]; 2 Witkin, Cal. Procedure, Trial, § 125.)

Having already determined that there was substantial evidence to support the judgment in favor of plaintiff, appellant's contention cannot be sustained.

Appellant's last contention is that ''It Was Error to Instruct the Jury on Issues Not Involved in the Case Even Though Such Instructions Are Abstractly Correct.'' This last contention consists of several points.

First, ''Did the Trial Court err in giving an instruction on punitive damages?'' At the time of the argument on the motion for a new trial, the reporter's transcript discloses the following:

''THE COURT: The motion for new trial as against the Defendant Helmco only is granted unless *on or before March 17, 1961, plaintiff shall remit from said judgment exemplary damages in the sum of $1500,* thus reducing the judgment to $6,000—no, reducing the judgment to $2990 compensatory damages.

''If so remitted, said motion for new trial will be denied.'' (Emphasis added.)

The point is moot. Respondent remitted the exemplary damages.

Second, ''Was it error for the Court to instruct on the elements of fraud where the determination of this question was taken from the jury and decided by the Court?''

As set forth in disposing of Helmco's second contention, the question of whether Scanlan *committed fraud* was in fact submitted to the jury. The question of Scanlan's *liability for fraud* was not submitted to the jury. (See discussion under second contention, *supra.*)

Third, ''By refusing to fully instruct on the definition of 'independent contractor' did the Court deprive defendant Helmco, Inc. of presenting its theory of the case to the jury? The instruction referred to is based upon Labor Code section 3353, which defines an independent contractor, and there followed a statement setting forth the legal effect if the jury found defendant Scanlan to be an independent contractor. *That part of the instruction setting out the effect of such a relationship was stricken by the Court and not read to the jury.''* (Emphasis added.)

The portion of the instruction dealing with independent contractor which was read is as follows:

''Independent contractor means any person who renders

service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished.''

The portion of the same instruction not read to the jury is as follows:

''If you find that defendant Scanlan was at all times an independent contractor, and that he was not an agent who was empowered to bind Helmco, Inc. or make Helmco, Inc. responsible for 'sales talk' or representations made in connection with his efforts in selling merchandise.''

It is apparent that the above instruction (i.e. the portion not read to the jury) was incomplete. It did not even set forth the legal effect of Scanlan being an independent contractor. The portion not read did not even constitute a complete sentence.

Helmco submitted the above instruction. It was Helmco's obligation to submit a complete and accurate instruction.

In any event, the jury was properly instructed that in order to impose liability on Helmco it was necessary to find that Scanlon was an agent and had authority. Appellant's contention is without merit.

For the reasons stated, the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.