Darren GRANT, an individual;
Plaintiff,

v.

AURORA LOAN SERVICES, INC, a Delaware Corporation; Quality Loan Service Corporation; a California Corporation; and Does 1–10, inclusive, Defendants.

Case No. CV 09–08174 MM(CTx).

United States District Court,
C.D. California.

Sept. 10, 2010.

Dana Milmeister, Smith & Grant, Los Angeles, CA, for Plaintiff.

Justin D. Balser, Akerman Senterfitt LLP, Los Angeles, CA and Denver, CO, for Defendant, Aurora Loan Services LLC.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

On October 7, 2009, Darren Grant filed an action against Aurora Loan Services, Inc.[1] in the Los Angeles Superior Court, alleging various claims related to the sale at foreclosure of a residential rental prop-

---

1. Grant sued Aurora Loan Services LLC erroneously as Aurora Loan Services, Inc. (Defendant's Notice of Motion and Motion to Partially Dismiss Plaintiff's First Amended Complaint, Docket No. 29 ("Motion to Dismiss") (May 24, 2010).) Aurora Loan Services, LLC is a limited liability company that has one member, Aurora Federal Savings

erty in San Francisco, California, and a residential property in Woodland Hills, California.[2] Aurora removed the case to federal court on November 6, 2009, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.[3] Thereafter, plaintiff filed a first amended complaint.[4] On May 24, 2010, Aurora filed a motion seeking to dismiss certain claims in the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and a motion to strike plaintiff's punitive damages prayer under Rule 12(f).[5] Plaintiff has opposed defendant's motions.[6]

Defendant's motion is currently on calendar for hearing on September 13, 2010. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the court finds the matter appropriate for decision without oral argument and vacates the hearing scheduled for September 13, 2010.

## I. FACTUAL BACKGROUND

In July 2005, Darren Grant refinanced the mortgage on his primary residence, located in Woodland Hills, California, taking out an adjustable rate mortgage of $1,000,000.[7] Thereafter, Aurora assumed the loan and became the lender listed on the title.[8] In late 2008, plaintiff defaulted on his mortgage and Aurora commenced foreclosure proceedings.[9] Plaintiff requested that Aurora approve a "short sale" [10] of the property, but was unable to conclude a sale allegedly because Aurora delayed responding to his submission of five purportedly qualified buyers, and refused plaintiff's reasonable market-rate offers.[11]

Plaintiff contends that Aurora intentionally engages in a business practice of delaying its response to requests for short sale so that the sales cannot be completed prior to foreclosure.[12] Specifically, plaintiff asserts that Aurora does not allow borrowers to contact employees in charge of approving short sales by direct email or fax.[13] Instead, Aurora requires that all paperwork be sent to a single general fax number. Plaintiff alleges that, as a consequence, when he attempted to negotiate a short sale, Aurora "often lost or misplaced submissions, thereby requiring resubmis-

Bank, a Delaware corporation. (Defendant's Notice of Removal of Action to Federal Court Based on Diversity Jurisdiction, Docket No. 1 (Nov. 6, 2009) ("Notice of Removal").)

2. Notice of Removal, Exh. A (Complaint for 1. Breach of Written Contract; 2. Breach of Contract; 3. Breach of Contract; 4. Breach of Covenant of Good Faith and Fair Dealing; 5. Action to Set Aside Foreclosure; 6. Fraud; 7. Fraudulent Concealment; 8. Unfair Business Practices).

3. See Defendant Aurora Loan Services, LLC's Notice of Removal of Action to Federal Court Based on Diversity Jurisdiction, Docket No. 1 (Nov. 6, 2009).

4. First Amended Complaint ("Complaint"), Docket No. 26 (Apr. 16, 2010).

5. Aurora does not seek dismissal of plaintiff's first cause of action for breach of contract. (Motion to Dismiss at 1.)

6. Plaintiff's Opposition to Defendant's Motion to Partially Dismiss Plaintiff's First Amended Complaint, Docket No. 35 (August 23, 2010) ("Pl.'s Opp.").

7. Complaint, ¶ 14.

8. *Id.,* ¶ 14.

9. *Id.,* ¶ 15.

10. A "short sale" is a sale of "the property for an amount less than the amount owed on the loan ..." *Martinez v. America's Wholesale Lender,* No. C 09–05630 WHA, 2010 WL 934617, *2 (N.D.Cal. Mar. 15, 2010).

11. *Id.,* ¶¶ 16–18.

12. *Id.,* ¶ 17.

13. *Id.*

sion (re-faxing) of the same documentation three and four times."[14] He contends that this practice caused delays that resulted in all of his agreements with interested buyers "falling out of escrow."[15] When this happened, plaintiff purportedly had to "resubmit an entirely new short sale request, [and] get assigned to a new [Aurora] negotiator." Because "the process would again take weeks and weeks,"[16] he asserts that closing a short sale was impossible.

Plaintiff relies on a purported "trade custom and usage ... that short sale offers a few percentage points [the] below then-current market value of the property would be accepted by the lender," so long as the mortgagor could document and prove that he was unable to continue making full payments on the existing mortgage.[17]

In a letter dated June 18, 2009, sent regular mail, Aurora advised plaintiff of its intention to hold a foreclosure sale of the Woodland Hills property on June 23, 2009. Aurora's letter stated that the foreclosure sale would proceed "if it did not receive the requested documentation[18] at least five business days before the foreclosure sale."[19] Since Aurora's letter was dated "three business days" prior to the date of the sale,[20] plaintiff contends that it was "impossible" to comply with Aurora's condition and forestall foreclosure.[21] He also asserts that he had already "submitted the [required] documentation via fax to Aurora's general fax number."[22]

Plaintiff did not submit additional documentation to Aurora following receipt of the June 18, 2009 letter. On June 23, 2009, Aurora sold plaintiff's home at foreclosure. He contends that Aurora has denied numerous verbal and written requests that it rescind the sale.[23]

Plaintiff suffers from a congenital heart valve problem that was surgically corrected twenty-four years ago.[24] He asserts that, as a result of stress associated with foreclosure on his home, he has developed an aneurysm on his aorta, which "[has] expand[ed] at and unexpected and alarming rate in a short period of time."[25] Plaintiff underwent open heart surgery to address this problem in early September 2009.[26]

Plaintiff's amended complaint pleads eight claims, the first of which relates to the foreclosure sale of his San Francisco rental property, and the remainder of which relate to the foreclosure sale of his Woodland Hills primary residence. Plaintiff pleads claims for breach of contract based on the sale at foreclosure of his San Francisco rental property; breach of oral contract; breach of implied contract; breach of the covenant of good faith and

---

**14.** *Id.*

**15.** *Id.*

**16.** *Id.*

**17.** *Id.*, ¶ 18.

**18.** *Id.* Although plaintiff does not clearly allege what was meant by the "requested documentation," the court assumes the phrase was a reference to documentation reflecting a short sale offer on terms acceptable to Aurora.

**19.** *Id.*, ¶ 19.

**20.** *Id.* June 18, 2009 was a Thursday.

**21.** *Id.*

**22.** *Id.* While the "subject documentation" to which plaintiff refers is not entirely clear, the court assumes that plaintiff refers to the documentation of short sale offers plaintiff presented to Aurora on previous occasions.

**23.** *Id.*

**24.** *Id.* ¶ 21

**25.** *Id.*

**26.** *Id.*

fair dealing; set aside of the foreclosure of his residence; fraud; fraudulent concealment; and unfair business practices. Plaintiff asserts each claim against Aurora and certain fictitiously named defendants who were allegedly responsible as agents, principals, alter egos, co-conspirators or otherwise for his damages.[27] He seeks actual damages, medical and related expenses, past and future lost earnings, punitive damages, and declaratory relief.

On May 24, 2010, Aurora filed a motion seeking dismissal of plaintiff's second through eighth causes of action under Rule 12(b)(6), and a motion to strike plaintiff's prayer for punitive damages under Rule 12(f). Plaintiff opposes defendant's motion.

## II. DISCUSSION

### A. Aurora's Requests for Judicial Notice

■ With its motion to dismiss, Aurora filed a request asking that the court take judicial notice of documents allegedly related to plaintiff's claims.[28] In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). It may, however, consider documents that are proper subjects of judicial notice. See *Zucco Partners, LLC v. Digimarc Corp.*,

552 F.3d 981, 991 (9th Cir.2009) (court may consider "matters of which [it] may take judicial notice" in deciding motion to dismiss); *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir.2007) ("[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute," quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 677 (9th Cir.2001)).

Aurora requests that the court take judicial notice of the following documents: the trustee's deed on sale for the Woodland Hills property,[29] the Federal Stock Charter for Lehman Brothers Bank FSB,[30] the Office of Thrift Supervision's Order Approving Aurora Loan Services as an Operating Subsidiary of Lehman Brothers Bank,[31] the Secretary's Certificate attesting that Lehman Brothers Bank FSB changed its name to Aurora Bank FSB,[32] a certification by the Delaware Secretary of the State authenticating the certificate of incorporation for Aurora Loan Services Inc., filed May 15, 1997,[33] Aurora's certificate of conversion from a corporation to an LLC,[34] and a certificate of amendment changing Aurora's Certificate of Formation to reflect its designation as a limited liability company.[35]

■ "Judicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547

---

27. Plaintiff did not assert claims against defendant Quality Loan Service Corporation, and Quality Loan Service timely filed a Declaration of Nonmonetary Status under Civil Code § 2924*l* to which plaintiff did not object. (Notice of Removal, ¶ 7, Exh. 3.)

28. Request for Judicial Notice in Support of Motion to Partially Dismiss the First Amended Complaint ("Notice Request"), Docket No. 29 (May 4, 2010).

29. Notice Request, Exh. 1

30. *Id.*, Exh. 2.

31. *Id.*

32. *Id.*

33. *Id.*, Exh. 3.

34. *Id.*

35. *Id.*

F.3d 943, 955 (9th Cir.2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)). The trustee's deed on the sale of the Woodland Hills property [36] is a document recorded by the Los Angeles County Recorder's Office. Aurora has provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record. See *Fimbres v. Chapel Mortgage Corp.*, No. 09–CV–0886–IEG (POR), 2009 WL 4163332, *3 (S.D.Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee, as each was a public record); *Maguca v. Aurora Loan Services*, No. SACV 09–1086 JVS (ANx), 2009 WL 3467750, *2 n. 2 (C.D.Cal. Oct. 28, 2009) ("The Court takes judicial notice of the notice of default, as it is a public record"); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09–CV–877–AWI–SMS, 2009 WL 3427179, *3 n. 3 (E.D.Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider these foreclosure documents");

*Distor v. U.S. Bank NA*, No. C 09–02086 SI, 2009 WL 3429700, *2 (N.D.Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice); *Hutson v. American Home Mortgage Servicing, Inc.*, No. C 09–1951 PJH, 2009 WL 3353312, *3–4 (N.D.Cal. Oct. 16, 2009) (taking judicial notice of a deed of trust, notice of default and election to sell under deed of trust, notice of trustee's sale, and trustee's deed of sale, as the documents had been recorded by the Contra Costa County Recorder's Office); *Heuslein v. Chase Bank U.S.A., N.A.*, No. 09–CV–1292–IEG (RBB), 2009 WL 3157484, *3 (S.D.Cal. Sept. 24, 2009) (taking judicial notice of a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale that had been recorded in the San Diego County Recorder's Office); *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057–58 (C.D.Cal.2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust).[37]

---

**36.** *Id.*, Exh. 1.

**37.** As the complaint refers to or necessarily relies on records related to the sale of plaintiff's property, and as neither party disputes the authenticity of the records, they may also be considered under the incorporation by reference doctrine. This rule permits a court deciding a Rule 12(b)(6) motion to consider documents incorporated by reference, but not physically attached to the complaint, if they are central to plaintiff's claim and no party questions their authenticity. See *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006) (in ruling on a motion to dismiss, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion," citing *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994), overruled on other grounds, *Galbraith v. County of*

*Santa Clara*, 307 F.3d 1119 (9th Cir.2002)); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n. 5 (9th Cir.2003); see also *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir.2007) ("Review is generally limited to the contents of the complaint, but a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document," citing *Warren*, 328 F.3d at 1141 n. 5); *Lee*, 250 F.3d at 688 ("If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them," citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)); *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir.1999) ("[The incorporation by reference doctrine] permits a district court to consider documents 'whose contents are alleged in a complaint

■ The court likewise takes judicial notice of the documents defendants proffer regarding Aurora's incorporation and conversion to an LLC—the Federal Stock Charter for Lehman Brothers Bank FSB,[38] the Office of Thrift Supervision's Order Approving Aurora Loan Service as an Operating Subsidiary of Lehman Brothers Bank,[39] the Secretary's Certificate attesting that Lehman Brothers Bank FSB changed its name to Aurora Bank FSB,[40] the certification by Delaware Secretary of State authenticating the certificate of incorporation for Aurora Loan Services Inc. filed May 15, 1997,[41] Aurora's certificate of conversion from a corporation to an LLC,[42] and the certificate of amendment recording the change of Aurora's corporate form and designation in its Certificate of Formation.[43] See FED.R.EVID. 201(b) (stating that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); see also *McCall v. Scott,* 239 F.3d 808, 814 n. 3 (6th Cir.2001) ("[W]e take judicial notice of the Restated Certificate of Incorporation"); *McMichael v. U.S. Filter Corp.,* No. ED CA 99–182VAP, 2001 WL 418981, *8 (C.D.Cal. Feb. 23, 2001) (taking judicial notice of a certificate of incorporation filed in Delaware); *Redding v. Freeman Products, Inc.,* No. 94 C 398, 1995 WL 410922, *2 (N.D.Ill. July 10, 1995) (taking judicial notice of certificates of good standing filed with the Illinois Secretary of State); *Access 4 All v. Oak Spring, Inc.,* No. 504CV75OCGRJ, 2005 WL 1212663, *2 n. 16 (M.D.Fla. May 20, 2005)

(taking judicial notice of the records of the Florida Department of State, Division of Corporations, which reflected that one plaintiff was an officer and director of the other); *In re Teledyne Defense Contracting Derivative Litigation,* 849 F.Supp. 1369, 1383 (C.D.Cal.1993) (stating that "[p]laintiffs' claim for negligent breach of fiduciary duty against the Directors is barred by the Corporation's Certificate of Incorporation (of which this Court may take judicial notice)"); see also *Banks v. Consumer Home Mortgage, Inc.,* No. 01–CV–8508 (ILG), 2003 WL 21251584, *6 n. 7 (E.D.N.Y. Mar. 28, 2003) ("Plaintiffs submitted a public record on file with the Secretary of State for Georgia, where CHM lists Michael Ashley as the Chief Financial Officer of CHM. This Court can take judicial notice of this official filing by CHM").

**B. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of

and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,' " quoting *Branch,* 14 F.3d at 454).

38. *Id.,* Exh. 2.

39. *Id.*

40. *Id.*

41. *Id.,* Exh. 3.

42. *Id.*

43. *Id.*

the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens,* 57 F.3d 747, 750 (9th Cir.1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 553–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); see also *Twombly,* 550 U.S. at 545, 127 S.Ct. 1955 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service,* 572 F.3d 962, 969 (9th Cir.2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly* ).

**C. Whether Plaintiff's Second and Third Causes of Action State a Claim for Breach of an Oral or Implied Contract**

Plaintiff's second cause of action alleges a breach of oral contract claim. To plead such a claim under California law, plaintiff must allege: (1) the existence of a contract; (2) her performance of the contract, or a legally cognizable excuse for nonperformance; (3) defendants' breach; and (4) resulting damage. *First Commercial Mortgage Co. v. Reece,* 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001); *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 1388, 272 Cal.Rptr. 387 (1990).

Plaintiff's contract claim fails because he does not allege the existence of a contract. Plaintiff asserts that he received a letter from Aurora dated June 18, 2009, which stated that "if [Aurora] did not receive the requested documentation at least five business days before the foreclosure sale, the foreclosure sale would go forward as scheduled." [44] Indeed, his cause of action alleges that Aurora made an "offer to delay the foreclosure sale" if he submitted appropriate documentation. While the nature of the documentation to which plaintiff refers is not entirely clear, the allegations in the complaint indicate that Aurora required plaintiff to present a qualified buyer and a suitable offer of sale for its review before it would approve a short sale.[45] Thus, plaintiff's allegation that Aurora "offered" to consider a short sale in lieu of foreclosure if he submitted suitable documentation, at most, constituted a promise to enter into a future agreement.[46] Such a promise is not generally enforceable as a binding contract. See, e.g., *City*

---

**44.** *Id.,* ¶ 19.

**45.** See, e.g., *id.,* ¶¶ 17–18, 20.

**46.** In fact, its statement falls short even of a promise to enter into a future contract, since Aurora did not commit that it would approve any short sale submitted.

*of Los Angeles v. Superior Court,* 51 Cal.2d 423, 433, 333 P.2d 745 (1959) ("The contract is claimed to be void because it contains promises to agree in the future. The general rule is that if an 'essential element' of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made"); *Alaimo v. Tsunoda,* 215 Cal.App.2d 94, 98, 29 Cal.Rptr. 806 (1963) (" 'Where, in a business transaction, an important item is reserved for future determination no enforceable obligation is thereby created for neither law nor equity provides a remedy for a breach of an agreement to agree in the future,' " quoting *Roberts v. Adams,* 164 Cal.App.2d 312, 316, 330 P.2d 900 (1958)); *Brawley v. Crosby Research Foundation,* 73 Cal.App.2d 103, 116, 166 P.2d 392 (1946) (" 'Unless an agreement to make a future contract is definite and certain upon the subjects to be embraced therein, it is nugatory. Consequently, the acceptance of a proposition to make a contract, the terms of which are to be subsequently fixed, does not constitute a binding obligation,' " quoting 1 ELLIOTT ON CONTRACTS, § 175 (emphasis omitted)).[47] Accordingly, plaintiff cannot base a breach of contract claim on Aurora's June 18, 2009 statement.

■ Plaintiff's third cause of action alleges that Aurora knew, at all relevant times, of that it was mortgage industry custom to accept offers of a short sale in lieu of foreclosure if the mortgagor demonstrated that he was unable to continue making payments on the loan in full. Plaintiff premises his claim that he and Aurora had a contract that obligated Aurora to accept a short sale offer on this purported industry practice. "[E]vidence of custom and usage may be introduced to interpret, explain or supplement a contract, [but] it may not be used to create one where none exists ... until some contract between the parties is shown, usage has no effect and is immaterial in establishing contract liability." 34 WILLISTON ON CONTRACTS § 4 (4th Ed. 2010); see also *White Point Co. v. Herrington,* 268 Cal. App.2d 458, 468, 73 Cal.Rptr. 885 (1968) (" '[I]t is a well-established principle that although custom is admissible for the purpose of interpreting the contract or agreement of the parties, or for furnishing details not expressly covered thereby, it is not admissible to establish a contract.' " quoting *Magna Development Co. v. Reed,* 228 Cal.App.2d 230, 39 Cal.Rptr. 284 (1964) (citations omitted)); *Morris v. Aerojet–General Corp.,* 183 Cal.App.2d 609, 614, 6 Cal.Rptr. 906 (1960) (" 'Usage and custom may be introduced as a instrument of interpretation, but may not be used to create a contract,' " quoting *Ghiselin v. John Hancock Mut. Life Ins. Co.,* 79 Cal. App.2d 438, 441, 180 P.2d 50 (1947)). Plaintiff's third cause of action thus fails to state a claim for breach of implied contract. Because neither claim is based on a legally cognizable contract, plaintiff's second and third causes of action must be dismissed for failure to state a claim upon which relief can be granted.

---

**47.** Additionally, Aurora's "offer" to delay the foreclosure sale did not give rise to an enforceable contract because there was no consideration for the offer. See, e.g., *Saks v. Charity Mission Baptist Church,* 90 Cal. App.4th 1116, 1135, 110 Cal.Rptr.2d 45 (2001) ("Consideration must actually be bargained for as the exchange for the promise ... The existence or non-existence of a bargain where something has been parted with by the promisee or received by the promisor depends upon the manifested intention of the parties.... *The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange,*" quoting *Meyer v. Glenmoor Homes, Inc.,* 246 Cal.App.2d 242, 259, 54 Cal.Rptr. 786 (1966) (emphasis original to *Saks;* internal quotations omitted)).

### D. Whether Plaintiff's Fourth Cause of Action States a Claim for Breach of the Covenant of Good Faith and Fair Dealing

 Plaintiff's fourth cause of action pleads a claim for breach of the covenant of good faith and fair dealing. California law implies a covenant of good faith and fair dealing in every contract. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,* 2 Cal.4th 342, 371, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992); see also *Chodos v. West Publishing Co.,* 292 F.3d 992, 996 (9th Cir.2002) (noting that "California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract" (citations omitted)). The covenant is implied "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights [to] the benefits of the contract." *Marsu B.V. v. Walt Disney Co.,* 185 F.3d 932, 938 (9th Cir.1999) (citing *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles,* 17 Cal.App.4th 432, 447, 21 Cal.Rptr.2d 313 (1993)).

 "In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Inter–Mark USA, Inc. v. Intuit, Inc.,* No. C–07–04178 JCS, 2008 WL 552482, *6 (N.D.Cal. Feb. 27, 2008) (citing *Love v. The Mail on Sunday,* No. CV05–7798 ABC (PJWx), 2006 WL 4046180, *7 (C.D.Cal. Aug. 15, 2006)). This is because "[i]t is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* at *7 (quoting *Carma Developers,* 2 Cal.4th at 373, 6 Cal.Rptr.2d 467, 826

P.2d 710). See *Commercial Union Assurance Companies v. Safeway Stores, Inc.,* 26 Cal.3d 912, 918, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980) ("However, what that duty embraces is dependent upon the nature of the bargain struck between the [parties] and the legitimate expectations of the parties which arise from the contract"). See also *Spencer v. DHI Mort. Co., Ltd.,* 642 F.Supp.2d 1153, 1165 (E.D.Cal.2009) (" 'The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.' The 'implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract,' " quoting *Smith v. City and County of San Francisco,* 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990)), and *Pasadena Live, LLC v. City of Pasadena,* 114 Cal.App.4th 1089, 1093–1094, 8 Cal.Rptr.3d 233 (2004).

 As noted, plaintiff has not alleged facts demonstrating that he and Aurora entered into a contract to complete a short sale of his property. In the absence of a contract, there can be no implied covenant of good faith and fair dealing. Because plaintiff has not adequately alleged that a contract existed, he also has not adequately specified the contractual provision(s) from which the implied covenant arises. Therefore, the court grants defendant's motion to dismiss plaintiff's fourth cause of action. See, e.g., *Love,* 2006 WL 4046180 at *7 (granting a motion to dismiss because plaintiff failed to identify a specific contractual provision from which the implied covenant of good faith and fair dealing arose).

### E. Whether Plaintiff's Fifth Cause of Action States a Claim to Set Aside the Foreclosure Sale

 Plaintiff's fifth cause of action seeks to set aside the foreclosure sale of plaintiff's property. "[U]nder California law, '[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.'" *Agbabiaka v. HSBC Bank USA Nat. Association*, No. C 09–05583 JSW, 2010 WL 1609974, *6 (N.D.Cal. Apr. 20, 2010) (quoting *Karlsen v. American Savings and Loan Assoc.*, 15 Cal.App.3d 112, 117–18, 92 Cal.Rptr. 851 (1971)). See also *FPCI RE–HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989) (to set aside a trustee's sale based on irregularities in notice or procedure, tender is required); *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 578, 205 Cal. Rptr. 15 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security"); see also *Odinma v. Aurora Loan Services*, No. C–09–4674 EDL, 2010 WL 1199886, *2 (N.D.Cal. Mar. 23, 2010) ("California district courts apply the tender rule in examining wrongful foreclosure claims"); *Anaya v. Advisors Lending Group*, No. CV F 09–1191LJO DLB, 2009 WL 2424037, *10 (E.D.Cal. Aug. 3, 2009)

("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); *Alicea v. GE Money Bank*, No. C 09–00091 SBA, 2009 WL 2136969, *3 (N.D.Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure"); *Montoya v. Countrywide Bank*, No. C09–00641 JW, 2009 WL 1813973, *11–12 (N.D.Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt"). Application of the tender rule prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." *Williams v. Countrywide Home Loans*, No. C 99–0242 SC, 1999 WL 740375, *2 (N.D.Cal. Sept. 15, 1999).

 Plaintiff does not allege that he was at the time of sale, or at any time, able to tender payment of his indebtedness to Aurora; plaintiff asserts only that he was able to provide documentation of his intent and ability to enter into a short sale agreement if Aurora approved.[48] Thus, plain-

---

48. Plaintiff's offer of a short sale—to tender an amount approximating the property's real market value—does not satisfy the tender rule. *Davidson v. Countrywide Home Loans, Inc.*, No. 09–CV–2694–IEG (JMA), 2010 WL 2925440, *3 (S.D.Cal. July 23, 2010) ("Plaintiffs argue they have satisfied any tender requirement by tendering the reasonable value of the Property, which Defendants declined to accept.... However, the cases which Plaintiffs rely on for the proposition that tender of the reasonable value of the Property is sufficient do not support their position," citing *United States Cold Storage v. Great Western Savings & Loan Ass'n*, 165 Cal.App.3d 1214,

1222, 212 Cal.Rptr. 232 (1985) (explaining "the law is long-established that a *trustor* or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale") (emphasis original), and *American Mortg., Network, Inc. v. Shelton*, 486 F.3d 815, 822 (4th Cir.2007) (holding that "[t]he trial court properly denied rescission, given the appellants' inability to tender payment of the loan amount")); *Jelsing v. MIT Lending*, No. 10cv416 BTM (NLS), 2010 WL 2731470, *5 n. 6 (S.D.Cal. July 9, 2010) ("Plaintiffs allegedly offered a short sale to Wells Fargo and argue that this satisfies the tender re-

tiff's claim seeking to set aside the foreclosure sale is barred by the tender rule. *Labra v. Cal–Western Reconveyance Corp.*, No. C 09–2537 PJH, 2010 WL 889537, *9 (N.D.Cal. Mar. 11, 2010) ("[A]s noted above, failure to tender bars any attempt to set aside a foreclosure sale. That is, plaintiff[ ] cannot state a claim for 'wrongful foreclosure' because [she has] not alleged an ability to tender the loan proceeds. An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cognizable cause of action"); see also *Saldate v. Wilshire Credit Corp.*, 711 F.Supp.2d 1126, 1141 (E.D.Cal.2010) ("The absence of an allegation of ability to tender amounts owed dooms a purported wrongful foreclosure claim."); *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal. Rptr.2d 286 (1996) (a defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure"). Plaintiff's failure to allege that he has tendered or can tender the amount of his indebtedness renders his wrongful foreclosure claim deficient. The court therefore grants defendant's motion to dismiss plaintiff's fourth cause of action.

### F. Whether Plaintiff's Sixth Cause of Action States a Claim for Fraud or Promissory Fraud

Plaintiff's sixth cause of action pleads a claim for fraud. The claim is based on Aurora's offer to enter into a short sale if plaintiff provided the lender with proper documentation five days before the scheduled foreclosure sale. Plaintiff asserts that Aurora's "mode of transmission [of the offer]—U.S. mail instead of fax or email transmission ... constitutes an intentional misrepresentation of material fact because it was almost impossible for Plaintiff to comply with the terms of the offer because of the short timeframe provided to get in additional information." [49] He contends that the "true facts were that Defendants had no intention of postponing the foreclosure sale," and the suggestion that it did constituted an intentional misrepresentation.[50]

▮ Under California law, fraud claims have five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal.4th 167, 173, 132 Cal. Rptr.2d 490, 65 P.3d 1255 (2003); see also *City Solutions Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 839 (9th Cir.2004) (same).

▮ Plaintiff's claim fails at the first step, since he fails to plead an actionable misrepresentation by Aurora or its agents. Aurora stated that it would proceed with the foreclosure sale unless plaintiff provided certain documentation five days prior to the date it was scheduled. Plaintiff admits that he did not get the documentation to

---

quirement. But they cite no authority supporting this contention and the Court rejects it"); *Spurlock v. Carrington Mortg., Services, Inc.*, No. 09CV2273–MMA (JMA), 2010 WL 3069733, *3 & n. 3 (S.D.Cal. Aug. 4, 2010) ("Here, Plaintiffs assert that they tendered the reasonable value of the property, but that Defendants rejected the offer. As an initial matter, Plaintiffs fail to offer any on-point legal authority for their assertion that an offer to pay the reasonable value of the property is a sufficient tender.... Furthermore, Plaintiffs' claim that they made a tender offer appears to be based on the alleged short sale offer they presented. Plaintiffs have provided no legal support for their position that a short sale offer is sufficient").

**49.** *Id.*

**50.** *Id.*, ¶ 48.

Aurora within this time period, and that Aurora proceeded with the sale. On the face of the complaint, therefore, it appears that Aurora's statement was truthful, not fraudulent. *Id.;* see also *In re GlenFed, Inc., Sec. Litig.,* 42 F.3d 1541, 1547–48 (9th Cir.1994) ("The time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not 'constitute' fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth"), superseded by statute on other grounds as recognized in *In re Boeing Securities Litigation,* 40 F.Supp.2d 1160 (W.D.Wash.1998); *Dena' Nena' Henash, Inc. v. Oracle Corp.,* No. C 07–633 CW, 2007 WL 1455905 (N.D.Cal. May 16, 2007) ("[Pl]aintiff [must] set[ ] forth 'what is false or misleading about a statement, and why it is false,'" quoting *In re GlenFed, Inc., Sec. Litig.,* 42 F.3d at 1548).

 Nor has plaintiff sufficiently pled the elements of promissory fraud, i.e., that Aurora entered into an agreement without intending to be bound by its terms. *Hsu v. OZ Optics Ltd.,* 211 F.R.D. 615 (N.D.Cal.2002); *Locke v. Warner Bros., Inc.,* 57 Cal.App.4th 354, 367, 66 Cal.Rptr.2d 921 (1997). "Promissory fraud is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar v. Superior Court,* 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996). To plead promissory

fraud, a plaintiff must plead the same elements as he would if asserting a general fraud claim. *Engalla v. Permanente Medical Group, Inc.,* 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997) (stating that the elements of promissory fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage"). Here, plaintiff alleges that the fact that Aurora communicated its offer to delay the foreclosure sale via first class mail shows that it had no intention of postponing the sale because Aurora made it impossible for him to comply with the terms of the offer.[51] Assuming, without deciding, that this fact sufficiently pleads intention not to perform, plaintiff's claim nonetheless fails, since, accepting the facts alleged as true, if Aurora communicated the offer via mail, such that plaintiff did not receive it until the day of the foreclosure sale, plaintiff could not have relied on the statement to his detriment.[52] As noted, a necessary element of a promissory fraud claim is justifiable reliance. *Downey Venture v. LMI Ins. Co.,* 66 Cal.App.4th 478, 510, 78 Cal.Rptr.2d 142 (1998) ("Thus, both estoppel and promissory fraud require proof that the party asserting the fraud or the estoppel *justifiably relied* on a promise or conduct by the party against whom the fraud or estoppel is asserted" (emphasis original)). See *Hamilton v. Wells Fargo Bank, N.A.,* No. 09–04152 CW, 2010 WL 1460253, *3 (N.D.Cal. Apr. 12, 2010) ("Plaintiff cannot sustain a claim for fraud if her complaint alleges facts 'incapable of showing detrimental reliance'" quoting

---

**51.** The mere fact that Aurora did *not* delay the foreclosure sale does not alone give rise to an inference that it had no intention of performing at the time it made the promise. See *Tenzer v. Superscope, Inc.,* 39 Cal.3d 18, 30–31, 216 Cal.Rptr. 130, 702 P.2d 212 (1985)

("if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury").

**52.** Complaint, ¶ 19.

*McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind.App.2007)); *Golesh v. Morgan Stanley DW Inc.*, No. C 06–5644 PJH, 2006 WL 3462662, *4 (N.D.Cal. Nov. 29, 2006) (finding, in the promissory fraud context, that a defendant's misrepresentation must be "'designed to induce the [plaintiff] to alter detrimentally his or her position'" quoting *Hunter v. Up–Right, Inc.*, 6 Cal.4th 1174, 1185, 26 Cal.Rptr.2d 8, 864 P.2d 88 (1994), and citing *Miller v. Fairchild Indus.*, 885 F.2d 498, 509–10 (9th Cir.1989)).

■ In this context, reliance means that plaintiff acted or refrained from acting as a result of the promise. *Engalla*, 15 Cal.4th at 976–77, 64 Cal.Rptr.2d 843, 938 P.2d 903 ("Actual reliance occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct, which alters his legal relations" (parenthetical original; internal quotation marks omitted)); *Linza v. Diamond Center, Inc.*, Nos. A101407, A101408, 2005 WL 3560800, *8 (2005) (Unpub. Disp.) (approving a jury instruction stating, *inter alia*, that the promise must have been made for "the purpose of inducing Plaintiff to rely upon it and to act or rfrain from acting in reliance upon it")[53] Here, there cannot have been any reliance because plaintiff did not become aware of the promise until after the time he could have acted in reliance on it. See *Sovary v. Los Angeles Police Dept., City of Los Angeles*, 222 Cal.Rptr. 504, 509 (1986) (Unpub. Disp.) ("One cannot rely on that of which one has no knowledge"); *Stapel v. Stapel*, No. 2009AP1195, 2010 WL 2757237, ¶ 23 (Wis.App. July 14, 2010) ("Nina could not reasonably rely on an option of which she was unaware").

Consequently, plaintiff has not pled a cognizable claim for promissory fraud, and the court grants defendant's motion to dismiss plaintiff's sixth cause of action.

### G. Whether Plaintiff's Sixth Cause of Action States a Claim for Fraudulent Concealment

■ Plaintiff's seventh cause of action states a claim for fraudulent concealment. In California, plaintiffs alleging fraudulent concealment must plead five elements: "'(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.'" *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal.App.4th 830, 850, 100 Cal. Rptr.3d 637 (2009) (quoting *Roddenberry v. Roddenberry*, 44 Cal.App.4th 634, 665–66, 51 Cal.Rptr.2d 907 (1996)).

■ Plaintiff alleges that Aurora failed to disclose that it would rely on out-of-date appraisals or broker price opinions in determining whether to approve his short sale requests, and that its concealment of this fact led him to engage in lengthy negotiations to attempt to conclude a short sale. Plaintiff does not allege, however, that Aurora had a duty to disclose the contents of the appraisals on

**53.** "Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05–313 VRW, 2005 WL 2893865, *3 (N.D.Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

which it relied. "As a general rule, 'a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Velasquez v. Chase Home Finance LLC*, 2010 WL 3211905 *5 (N.D.Cal.2010) (quoting *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096, 283 Cal. Rptr. 53 (1991)); see also *Gonzalez v. First Franklin Loan Services*, No. 1:09–CV–00941 AWI–GSA, 2010 WL 144862 *8 (E.D.Cal. Jan. 11, 2010) (same); *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1092, 283 Cal.Rptr. 53 (1991) ("[A] financial institution acting within the scope of its conventional activities as a lender of money owes no duty of care to a borrower in preparing an appraisal of the security for a loan when the purpose of the appraisal simply is to protect the lender by satisfying it that the collateral provides adequate security for the loan"). Plaintiff has not alleged that Aurora owed a special duty to disclose the estimates of home value upon which it relied in evaluating his short sale offers, nor that Aurora's relationship with plaintiff was anything other than that of a traditional money lender. In the absence of such an allegation, plaintiff has failed to plead a cognizable fraudulent concealment claim.

In addition, plaintiff's claim falls short of meeting the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that facts showing fraudulent concealment, like other fraud claims, be pled with specificity. See *Gabriel Technologies Corporation v. Qualcomm Inc.*, No. 08 CV 01992 MMA (POR), 2010 WL 3259739, *4 (S.D.Cal. Aug. 13, 2010) ("Plaintiffs argue the Court's prior orders 'do not discuss or even mention a fraudulent concealment claim.' The Court disagrees.... As a whole, Plaintiffs' allegations failed [ ] to satisfy the pleading requirements of Rule

9(b)"); *Velasquez v. Chase Home Finance LLC*, No. C 10–01641 SI, 2010 WL 3211905, *6 (N.D.Cal. Aug. 12, 2010) ("Here, plaintiff's fraud claims do not meet the heightened Rule 9(b) pleading standard. With respect to fraudulent concealment, plaintiff alleges only that defendants concealed material facts to make plaintiff believe his real estate investment was secure and did not inform plaintiff that the real estate bubble was about to explode. Plaintiff does not allege when the concealment took place or when each of the defendants allegedly knew that the real estate bubble was about to burst"); *Gomez v. Calpacific Mortg. Consultants, Inc.*, No. 09–CV–2926–IEG (CAB), 2010 WL 2610666, *3 (S.D.Cal. June 29, 2010) ("Under Plaintiff's separate cause of action for fraudulent concealment, she alleges E*Trade 'fraudulently concealed the true cost of the loan by providing false documents and statements....' These claims are not pled with particularity. First, Plaintiff alleges E*Trade inflated her income by 'using an income of $11,900.00 on the loan application,' yet fails to allege what she stated her actual income to be. Thus, [plaintiff] fails to sufficiently allege why the representation was false. Because Plaintiff's allegations of ... fraudulent concealment do not satisfy Rule 9(b), these causes of action are dismissed"); *Baba v. Hewlett–Packard Co.*, No. C 09–059646 RS, 2010 WL 2486353, *2 (N.D.Cal. June 16, 2010) ("Rule 9(b)'s heightened pleading requirements apply to claims for violations of CLRA and UCL where the claims are based on fraudulent conduct, such as ... misstatements and fraudulent concealment").

■ Plaintiff has not satisfied Rule 9(b). He alleges only that "during the latter part of 2008 and that first half of 2009," he "engaged in lengthy negotiations" with Aurora about the possibility of

a short sale, during which time Aurora relied on out-of-date estimates of plaintiff's home value.[54] These allegations do not adequately plead the time and place of the purported fraud. See *Segal Co. (Eastern States), Inc. v. Amazon.Com*, 280 F.Supp.2d 1229, 1231 (W.D.Wash.2003) ("[P]laintiffs' assertion that defendant's misrepresentations occurred over the course of 'several weeks' does not adequately indicate when and where the alleged fraud took place"); see also *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1094 (C.D.Cal. 1999) ("[A]llegations such as '[d]uring the course of discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b)," citing *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1057 (N.D.Cal.1991)).

■■■ Additionally, plaintiff pleads that he negotiated with "Defendant Aurora,"[55] but does not identify the actual "negotiators" who allegedly concealed their reliance on out-of-date appraisals or broker price opinions. Rule 9(b) can be relaxed where "matters are within the opposing party's knowledge," because "[i]n such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993); *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987). "[T]his exception[, however,] does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner*, 6 F.3d at 672; *Wool*, 818 F.2d at 1439; see also *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) ("[F]raud

allegations may be ... alleged [on information and belief] as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based"). Here, plaintiff apparently dealt personally with a variety of negotiators. To satisfy Rule 9(b), he must allege such information as he can regarding their identities and the basis upon which he believes that they relied on out-of-date appraisals and broker opinions. To the extent plaintiff is able to replead to cure the more substantive deficiencies in his fraudulent concealment claim, therefore, he must plead with the specificity required by Rule 9(b).

## H. Whether Plaintiff's Seventh Cause of Action States a Claim for Unfair Business Practices

Plaintiff's seventh cause of action alleges unfair business practices in violation of California Business and Professions Code § 17200 et seq., California's Unfair Competition Law ("UCL").[56] Plaintiff cannot sue defendant under the UCL, however, because such claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 et seq., and regulations promulgated thereunder by the Office of Thrift Supervision ("OTS").

■■■ Federal law preempts state law in three circumstances: (1) when Congress expressly states that it does; (2) when federal regulation of a particular field is so pervasive as to make reasonable the inference that Congress left no room for states to supplement it; or (3) when state law actually conflicts with federal law. See, e.g., *Bank of America v. City and County*

54. *Id.*, ¶ 54.

55. *Id.*

56. Plaintiff asserts this claim on behalf of "all persons who, at any time since the date four

years before the filing of this complaint, lost their homes to foreclosure due to Defendants' unfair, fraudulent, or unlawful business practices." (*Id.*, ¶ 61.)

*of San Francisco,* 309 F.3d 551, 558 (9th Cir.2002). "HOLA was enacted in 1933 as a result of congressional dissatisfaction with state law and practice in financing home construction." The statute granted OTS "broad regulatory authority over thrift institutions." *Spears v. Washington Mutual, Inc.,* No. C–08–00868 RMW, 2009 WL 605835, *5 (N.D.Cal. Mar. 9, 2009) (citing *Conference of Federal Savings and Loan Associations v. Stein,* 604 F.2d 1256, 1257–58 (9th Cir.1979), and *Silvas v. E*Trade Mortgage Corp.,* 514 F.3d 1001 (9th Cir.2008)). OTS promulgated a regulation explicitly occupying the field of lending regulation for federal savings associations. *Id.* This provision, 12 C.F.R. § 560.2, states in pertinent part:

> "To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation." 12 C.F.R. § 560.2(a).

Section 560.2(b) enumerates thirteen types of laws that states are preempted from enacting, including laws governing loan-related fees; disclosure and advertising; escrow accounts; processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages; disbursements and repayments; and access to and use of credit reports.

The Ninth Circuit has described the procedure to be used in evaluating whether the OTS regulations preempt a state law as follows:

> "When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." *Silvas,* 514 F.3d at 1005 (quoting OTS Final Rule, 61 Fed. Reg. 50951, 50966–67 (Sept. 30, 1996)).

Aurora is a wholly-owned subsidiary of Lehman, a federal savings bank, and acts as a loan servicer. Plaintiff claims that Aurora engaged in unfair practices by failing to use "accurate appraisals, broker price opinions or comparable sales reflecting current market values of mortgaged properties to evaluate short sale requests," and by "[u]sing U.S. Mail to send offers to postpone foreclosures if documents [were] submitted by a certain deadline, which deadline [was] almost or actually impossible to meet counting time for mailing." [57] Plaintiff's UCL claims thus relate entirely to Aurora's "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages"—i.e., claims explicitly listed in 12 C.F.R. § 560.2(b)(10). As a result, the court concludes that the claims are preempted by HOLA and the OTR regulations. See, e.g., *Silvas,* 514 F.3d at 1006 ("Here, Appellants allege that E*TRADE violated UCL § 17500 by including false information on its website and in every

---

57. *Id.,* ¶ 60.

media advertisement to the California public. Because this claim is entirely based on E*TRADE's *disclosures and advertising*, it falls within the specific type of law listed in § 560.2(b)(9). Therefore, the preemption analysis ends. UCL § 17500 as applied in this case is preempted by federal law"); *id.* ("In addition, Appellants' claim under UCL § 17200 alleges that the lock-in fee itself is unlawful. That allegation triggers a separate section of paragraph (b). Section 560.2(b)(5) specifically preempts state laws purporting to impose requirements on loan related fees.... Because the UCL § 17200 claim, as applied, is a type of state law listed in paragraph (b) ... the preemption analysis ends there" (citation omitted)); *Spears,* 2009 WL 605835 at *6 ("Indeed, plaintiffs' theory of the case, that lenders and appraisers conspired to inflate appraisals in order to increase mortgage resale prices, demonstrates the importance and interrelationship of impartial appraisals to mortgage origination and servicing.... The court therefore finds that plaintiffs' UCL and CLRA claims, as applied, relate to the processing and origination of, and participation in, mortgages, and are thus preempted under § 560.2(b)(10)" (citations omitted)). Accordingly, the court dismisses plaintiff's seventh cause of action against Aurora with prejudice.

### III. CONCLUSION

For the reasons stated, the court grants defendant's motion to dismiss plaintiff's second through eighth causes of action. Plaintiff's unfair business practices claim under the UCL is dismissed with prejudice. Plaintiff may not replead this claim against Aurora. All other claims are dismissed with leave to amend. See *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995) ("'[A] district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts,'"

quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir.1990)); see also *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Plaintiff may file an amended complaint within twenty days of the date of this order.

Because the court dismisses plaintiff's sixth and seventh causes of action for fraud and fraudulent concealment, the court need not address defendant's Rule 12(f) Motion to Strike plaintiff's punitive damages claims based on those claims.